**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | **CRIMINAL ACTION** |
| | : | |
| **v.** | : | |
| | : | |
| **JOHN JACKEY WORMAN, et al.** | : | **NO.  07-00040** |

<u>**MEMORANDUM AND ORDER**</u>

**STENGEL, J.**                                                    **August 1, 2007**

John Worman is charged with fifty-one counts of using a child to manufacture child pornography and one count of possession of child pornography.  The government and the defendant have each filed discovery motions concerning permissible discovery under Rule 16 of the Federal Rules of Criminal Procedure.[1]  Essentially, the dispute concerns the defendant's access to 1.2 million images taken from his computers and more than 11,000 videos confiscated by the FBI and the Delaware County District Attorney's Office.  The 1.2 million images on the defendant's computers are, apparently, not all pornography.  The government acknowledges that certain of these images concern legal materials.  Among the 11,000 videos are tapes Mr. Worman made of children as they showered and used the toilet; they include thousand of videos of Mr. Worman himself

---

[1]  Rule 16 (a)(1)(E) of the Federal Rules of Criminal Procedure provides, in relevant part, that "the government must permit the defendant to inspect and to copy or photograph books, papers, documents, data, photographs, tangible objects, buildings or places, or copies or portions of any one of these items, if the item is within the government's possession, custody, or control and: (i) the item is material to preparing the defense; (ii) the government intends to use the item in its case-in-chief at trial; or (iii) the item was obtained from or belongs to the defendant."

engaging in oral and vaginal sex with female children.  There are twelve victims named in the Indictment, ranging in age from three months to fifteen years.  The period of abuse extended over nine years.

After a conference with the court and some discussion, the parties were able to agree on a discovery protocol.  This was confirmed in my Order of May 10, 2007.  The Order provided for the viewing of discovery materials on a computer set up by the government in a proffer room in the federal building.  The defendant, who is in custody, has been accompanied by his counsel, S. Lee Ruslander, Esquire, to three viewing sessions in the proffer room.  At the conclusion of the third session, Assistant U.S. Attorney Michelle Rotella expressed certain concerns to defense counsel and terminated the sessions subject to further motions.  Indeed, each side has submitted a discovery motion, each alleging the other has abused the discovery process.

I held a hearing on July 9, 2007, at which time the attorneys stated their respective positions.  I also heard testimony from Jennifer Coughlin, a Special Agent for the Federal Bureau of Investigation who has been supervising the discovery process.  Special Agent Coughlin testified that on April 2, 2007, defense counsel came to her office to view the evidence referred to in the Indictment.  The Indictment makes specific reference to video tapes depicting inappropriate conduct with each victim, for a total of fifty-one video tapes.  Agent Coughlin created folder files on the computer containing the videos the government will use for each of the victims.

Agent Coughlin testified as to the arrangements for viewing all the discovery materials pursuant to my Order of May 10, 2007.  Specifically, the government set up a computer in the proffer room, they changed the locks on the door to limit access, and they put the computer in a lock box so that it could not be accessed by anyone other than the agents in the case.  The government also set up two tables with monitors, one monitor facing the door, and one monitor facing the attorney and the defendant.  The door to the proffer room has a glass window through which the agents were able to observe the defendant and defense counsel for security purposes.  In addition, the door was left slightly ajar to enable ready access to the room, again for security purposes.

Agent Coughlin testified that the first discovery session took place on June 20, 2007.  She was present with Detective Jack Kelly of the Delaware County District Attorney's Office.  The defendant was placed in the room secured with leg and hand restraints, according to the U.S. Marshal's security protocol for a defendant in custody. The agent accommodated the defendant by placing the handcuffs so that the defendant's hands were at his sides.  The defendant was informed that lunch was available to him through the U.S. Marshals.  Mr. Ruslander advised Agent Coughlin that they would let her know when the defendant was hungry and needed to eat.  The defendant was afforded access to bathroom facilities during the session.[2]

---

[2]  Mr. Ruslander made much at the July 9 hearing about his client's access to the bathroom.  Agent Coughlin testified that bathroom facilities were available in the holding cell for this purpose.  Agent Coughlin further testified that no request had been made by the defendant or

`(continued...)`

According to Agent Coughlin, Mr. Ruslander operated the computer during this session and the defendant and defense counsel viewed certain videos in real time, meaning that they did not take advantage of the computer's ability to fast forward through some of the video tapes.  She noted that they reversed the player and reviewed certain videos more than once.  She noted that the defendant zoomed in and out on the genitals of certain child victims including an infant and an eight or nine-year-old being penetrated by an adult male.  Agent Coughlin also noted that Mr. Worman viewed, in real time, a video of one of the co-defendants performing oral sex on him.  Agent Coughlin also noted that the defendant's demeanor changed as he viewed these tapes and that he appeared to be "enjoying himself immensely."

The second session took place on June 22, 2007, again with the defendant restrained and accompanied by counsel.  Agent Coughlin used an extra set of cuffs to give the defendant the ability to place his hands on the table.  The session began with the defendant and Mr. Ruslander again viewing the adult video, i.e., the video depicting one of the co-defendants performing oral sex on Mr. Worman, and they further viewed some videos of children, again rewinding and playing certain videos "over and over again."

The third session took place on June 25, 2007.  For the third consecutive session, Mr. Worman viewed the video tape of one of the co-defendants (an adult female)

---

[2](...continued)
defense counsel for the defendant to move to the holding cell for this reason.  This does not appear to have been much of an issue during these sessions despite counsel's protestations of the lack of facilities available to his client.

performing oral sex on him.  Agent Coughlin noted that the defendant was smiling and laughing during the session.  During this session, Mr. Ruslander took four telephone calls and the session ended at 1:40 p.m., at Mr. Ruslander's request.

From Agent Coughlin's testimony, it appears that these sessions have all been scheduled to begin at 9:30 a.m., although there has been some brief delay in each instance caused by the need to bring the defendant from the Federal Detention Center into the proffer room.  The sessions have been intended to last until between 2:30 and 3:00 p.m., to accommodate the Federal Detention Center's schedule.  It appears that each session was terminated early at the request of the defendant or his attorney.

At the end of the June 25, 2007 session, AUSA Rotella informed the defendant and his attorney that the sessions were going to be terminated because of the government's perception that the defendant was abusing the process.  The defendant filed an "Emergency Motion to Enforce Compliance with Court Order and to Review Conditions under which the Discovery is to be Furnished and Viewed."  The government responded to this motion, and filed a motion asking me to limit the discovery to reasonable and ample access to the videos, images and photographs.

The Federal Rules of Criminal Procedure permit me for good cause shown "to deny, restrict, or defer discovery or inspection, or grant other appropriate relief."  See FED.R.CRIM.P. 16 (d).  In fact, the Third Circuit Court of Appeals recently reaffirmed the proposition that the sole purpose of discovery is to assist trial preparation.  United States

v. Wecht, 484 F.3d 194, 209 (3d Cir. 2007).  There is a need to balance the need for the prompt resolution of this case against the defendant's right to view evidence that will be used against him, that has been gathered by the government during the investigation, and that may provide him with certain defense arguments or testimony at trial.  After careful consideration of the briefs of the parties, and after a hearing on the motion, I find that the government has shown good cause to restrict the defendant's access to discovery.

The government's concerns are that the defendant is taking too much time inspecting the evidence, and that the discovery process for this vast amount of information will unreasonably delay the trial.  The government also suggests that the defendant is using the discovery viewing sessions for an improper purpose, and that he seems to be viewing certain tapes multiple times for his own enjoyment, and not for discovery purposes.

The defendant contends that the discovery process will take a long time and that he is entitled to view each and every item of information in the possession of the government that is at all related to this case.  Defense counsel denies any improper purpose and is outraged by the government's suggestion that the defendant is doing anything wrong.

The government has made it clear that it will use approximately five video tapes per victim at the trial.  These tapes have been identified to defense counsel.  At the July 9, 2007 hearing, I asked defense counsel to articulate his reasons for wanting to see material that will not be used at trial in the government's case-in-chief.  For reasons relating to

attorney work product and attorney-client privilege, defense counsel was reluctant to identify his reasons or strategy.  I requested that defense counsel submit an *ex parte* statement in support of his demand that he and his client view each and every image and video tape in the possession of the government.

I have reviewed the *ex parte* submission by defense counsel, and without disclosing the defense strategy, I can note for this memorandum that the defendant is concerned with evaluating all the discovery to determine if any of the government's documents, photos, videos or other images contain exculpatory information.  Further, defense counsel has expressed a concern with his ability to determine the need for any expert testimony.  Finally, it appears that the defense is concerned that an in-depth view of the discovery may lead to other, yet unidentified, defense strategies.

One thing is clear: to view the available discovery at the current pace could drag the discovery process out for years.  In three sessions lasting from approximately 9:45 a.m. until 2:00 p.m., without a break for lunch, the defense has viewed ten videos.  At this pace, it will take 1100 full-day sessions to view all the videos, not to mention the 1.2 million images taken from the defendant's computers.

According to the credible testimony of Agent Coughlin, much of the defendant's viewing had to do with breaking down the acts depicted on the tapes and attempting to identify the adult depicted in the sex acts.  In fact, Mr. Ruslander confirms that the

defendant has been attempting to determine who took the videos, who is depicted in the videos, and what conduct exactly is being shown.

The defendant is charged with sexual exploitation of children under 18 U.S.C. § 2251(a)[3] and (e).[4]  The elements of this offense involve inducing, enticing, coercing or using a minor to engage in sexually explicit conduct for the purpose of producing any visual depiction of that conduct.  Issues regarding use of force, penetration, consent, competency of the victims and the like, which may be elements of certain state law sex crimes, are not relevant to this case.  The excruciatingly detailed examination of each

---

[3] (a) Any person who employs, uses, persuades, induces, entices, or coerces any minor to engage in, or who has a minor assist any other person to engage in, or who transports any minor in interstate or foreign commerce, or in any Territory or Possession of the United States, with the intent that such minor engage in, any sexually explicit conduct for the purpose of producing any visual depiction of such conduct, shall be punished as provided under subsection (e), if such person knows or has reason to know that such visual depiction will be transported in interstate or foreign commerce or mailed, if that visual depiction was produced using materials that have been mailed, shipped, or transported in interstate or foreign commerce by any means, including by computer, or if such visual depiction has actually been transported in interstate or foreign commerce or mailed.

[4] (e) Any individual who violates, or attempts or conspires to violate, this section shall be fined under this title and imprisoned not less than 15 years nor more than 30 years, but if such person has one prior conviction under this chapter, chapter 71, chapter 109A, or chapter 117, or under section 920 of title 10 (article 120 of the Uniform Code of Military Justice), or under the laws of any State relating to the sexual exploitation of children, such person shall be fined under this title and imprisoned for not less than 25 years nor more than 50 years, but if such person has 2 or more prior convictions under this chapter, chapter 71, chapter 109A, or chapter 117, or under section 920 of title 10 (article 120 of the Uniform Code of Military Justice), or under the laws of any State relating to the sexual exploitation of children, such person shall be fined under this title and imprisoned for not less than 35 years nor more than life.  Any organization that violates, or attempts or conspires to violate, this section shall be fined under this title.  Whoever, in the course of any offense under this section, engages in conduct that results in the death of a person, shall be punished by death or imprisoned for any term of years or for life.

video tape and image is, in fact, not necessary.  This is especially true given the Supreme

Court's recent observation that "as a permanent record of a child's abuse, the continued

circulation itself would harm the child who had participated.  Like a defamatory

statement, each new publication . . . would cause new injury to the child's reputation and

emotional well-being."  Ashcroft v. Free Speech Coalition, 535 U.S. 234, 249 (2002).  By

his approach to viewing discovery over the three sessions in June, 2007, the defendant

demonstrated that he is interested in something other than trial preparation.  The

defendant viewed one video three times, that is, once in each session.  This video involves

him and an adult co-defendant in a sex act.  Mr. Worman, by his own conduct, confirms

the reasonableness of the concern that discovery not be used to continue to victimize the

children involved.  Mr. Worman's approach to the discovery process calls for court

intervention and for some limitation on his access to the many, many videos and photos.

The question is how much to limit his access, because his right to discovery is important

and necessary to his making informed decisions about his strategy. [5]

The defendant is entitled to view each of the tapes or images which will be

introduced against him at trial in support of the counts in the Indictment.  He, or his

---

[5]  I am also mindful, however, that the extreme limitation on discovery
"undermines Rule 16's mandatory discovery provisions, which were instituted upon the
belief that 'broad discovery contributes to the fair and efficient administration of criminal
justice by providing the defendant with enough information to make an informed decision
as to plea; by minimizing the undesirable effect of surprise . . . and by otherwise
contributing to an accurate determination of the issue of guilt or innocence.'"  United
States v. Cadet, 423 F.Supp.2d 1, 7 (E.D.N.Y. 2006) (quoting Rule 16 Advisory
Committee Notes, 1974 Amendments).

attorney, is also entitled to view other materials to determine if there is any exculpatory information or other information relevant to any defense to these charges.  But this examination need not take months or years.  Counsel can view this information without the defendant, and counsel and the defendant can avail themselves of such techniques as fast forwarding and can, in general, use their time more efficiently in the viewing of this material.  In its current posture, the discovery process is being abused by the defense.  In order to preserve the defendant's rights to view the evidence to be used against him and to serve society's and the defendant's interest in the prompt resolution of these charges, I will modify the discovery Order yet again.

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | CRIMINAL ACTION |
| | : | |
| v. | : | NO.  07-00040 |
| | : | |
| JOHN JACKEY WORMAN, et al. | : | |

## ORDER

**AND NOW**, this 1st day of August, 2007, upon consideration of the defendant's emergency motion to enforce compliance (Document #46), the government's motion to limit discovery (Document #47), and after a hearing on the motions with all parties present, it is hereby ORDERED that the parties' motions are GRANTED.

IT IS FURTHER ORDERED that my discovery Order of May 10, 2007 is modified as follows:

1.      The government shall make available to the defendants in custody and to their counsel the photos, images, and videos taken from defendant John Worman for inspection, review and examination in accordance with Rule 16 of the Federal Rules of Criminal Procedure by making such photos, images, and videos available on a secure computer.  This computer shall be configured in such a way that nothing can be copied from it to any other storage medium.  The assigned agents of the FBI and the Delaware County District Attorney's Office shall remain outside the room while observing the review of the computer evidence by the defendants and their counsel.

2.      These discovery sessions shall begin at 9:30 a.m., and last until 3:00 p.m., with brief breaks for lunch or other reasonable purposes at the request of the defendant or counsel.

3.     The defendant John Worman may be present for a total of two (2) of these discovery sessions with his counsel.

4.     Defense counsel shall have access to the discovery material with no limitation on the number of viewing sessions.  Defense counsel may view the discovery materials at any time during normal business hours upon reasonable notice to the government.  Defense counsel's access shall be on a computer provided by the government and may be conducted in an unsecured room at the United States Attorney's Office in Philadelphia, or at the FBI office in Radnor, PA, or at any facility to which the parties may agree.

5.     Additional discovery reviewing sessions where the defendant is present may be permitted only upon motion by defense counsel and for good cause shown.

6.     The discovery viewing by the defendant and/or defense counsel shall be completed on or before **Wednesday, October 31, 2007.**

7.     In the event that the defendant wishes to retain a computer forensic expert for assistance in viewing the mirror image taken by the government of the defendant John Worman's computer(s), he shall apply to the court for the appointment of such an expert as soon as practicable.  His application for an expert shall identify the expert by name and address, and the court will appoint an expert to assist the defense in examining the mirror image of the defendant's computer hard drive(s) or any other discovery matter requiring technical expertise.  In the event that the defendant wishes to retain an expert for any other purpose, he shall apply to the court by providing the name and address of the

requested expert as soon as practicable.  The applications for the appointment of experts may be done *ex parte* so as not to disclose to the government any defense strategy or work product.

8.     In the event that a defense expert requires a copy of some or all of the photographs, images, or videos for analysis, defense counsel may petition the court for a production of a copy of certain files or folders for good cause and subject to an appropriate protective Order.

9.     Pretrial motions in this case shall be filed on or before **Friday, November 30, 2007**; responses shall be filed on or before **Monday, December 17, 2007**.

10.     Trial shall commence with jury selection on **Monday, February 4, 2008.**

BY THE COURT:


 /s/ Lawrence F. Stengel
LAWRENCE F. STENGEL, J.